UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLANDS RESTAURANTS, LP a Delaware Limited Partnership; and CFBC, LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>AFFILIATED FM INSURANCE COMPANY, a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:20-cv-02013-H-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>[Doc. No. 15.] |

On September 15, 2020, Plaintiffs Islands Restaurants, LP and CFBC, LLC ("Plaintiffs") filed a complaint against Defendant Affiliated FM Insurance Co. ("Defendant") in the Superior Court of California, County of San Diego. (Doc. No. 22-1.) On October 14, 2020, Defendant removed the action. (Doc. No. 1.) On January 29, 2021,

Defendant filed a motion for judgment on the pleadings. (Doc. No. 15.) Plaintiffs filed a response in opposition to Defendant's motion on February 23, 2021. (Doc. No. 19.) On March 1, 2021, Defendant filed a reply. (Doc. No. 20.) The Court held a hearing on the matter on March 29, 2021. (Doc. No. 25.) Michael J. Bidart and Danica Crittenden appeared for Plaintiffs, and Amy M. Churan and Daniel L. Allender appeared for Defendant. (Id.) For the following reasons, the Court grants Defendant's motion for judgment on the pleadings.

## Background[1]

Plaintiff Islands Restaurants, LP ("Islands") owns and operates approximately fifty tropical-themed restaurants located in California, Arizona, and Hawaii. (Doc. No. 22-1 ¶¶ 3-4.) In 2015, Islands partnered with Plaintiff CFBC, LLC, the owner and operator of several French-style bakery cafes located in California. (Id. ¶ 42.) Prior to 2020, both chains enjoyed "successful historical sales and customer traffic." (Id. ¶ 44.)

But in early 2020, governments in the jurisdictions Plaintiffs operate issued various closure orders (the "Closure Orders"), limiting Plaintiffs' operations during the COVID-19 pandemic. (Id. ¶¶ 61-116.) Plaintiffs summarized the impact of the Closure Orders in their complaint. (Id. ¶¶ 61-62.) According to them, the Closure Orders initially prohibited all dine-in services in March 2020, allowed for limited indoor and outdoor dine-in services around May 2020, and then suspended all indoor dine-in services around July 2020. (Id.) Plaintiffs allege that their compliance with these orders caused them to lose business income. (Id. ¶¶ 44, 63-64.)

Before the COVID-19 pandemic, Plaintiffs purchased a commercial property and general liability insurance policy (the "Policy") from Defendant, with a coverage period ranging from August 1, 2019 to August 1, 2020. (Id. ¶ 6.) The Policy generally covers Plaintiffs' property "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE," unless the risk is otherwise excluded. (Id. ¶ 27 (emphasis in original).) The Policy also provides

---

[1] The following allegations are taken from Plaintiffs' complaint unless otherwise provided.

"business interruption" coverage for certain losses incurred "as a direct result of physical loss or damage of the type insured" to covered property. (Id. ¶¶ 29-30.) The policy does not define "physical loss or damage." (Id. ¶ 28.) These coverage provisions are subject to exclusions for losses deriving from the "[l]oss of market or loss of use" of the covered property or from the inability to use the covered property because of "contamination." (Id. ¶¶ 33-34.)

On March 27, 2020, Plaintiffs filed a claim under the Policy's business interruption coverage provision for losses resulting from the Closure Orders. (Id. ¶ 117.) Plaintiffs clarified and conceded that they are not making a claim under any other coverage provision of the Policy, including the Policy's communicable disease provisions. After a substantial back and forth between the parties, (id. ¶¶ 118-56), on July 25, 2020, Defendant denied business interruption coverage for each of Plaintiffs' restaurants because Plaintiffs' losses did not directly result from "physical loss or damage" and, regardless, were excluded under the Policy's loss of use and contamination exclusions, (id. ¶¶ 157-60). On September 15, 2020, Plaintiffs filed the instant action, alleging that Defendant breached the Policy by denying their claim and, in so doing, also breached the implied covenant of good faith and fair dealing. (Id. ¶¶ 166-78.)

## Discussion

I. **Legal Standards**

   A. **Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) permits a district court to terminate a lawsuit where the facts alleged in the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Daewoo Elecs. Am. Inc. v. Opta Corp., 875 F.3d 1241, 1246 (9th Cir. 2017). In reviewing a Rule 12(c) motion, a district court must accept as true all facts alleged in the pleadings and draw all reasonable inferences in favor of the non-moving party. See Gregg v. Hawaii Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017). But because "Rule 12(c) is 'functionally identical' to Rule 12(b)(6)," a court need not accept legal conclusions as true. Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,

637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted). In addition, a court may consider documents incorporated into the complaint by reference and items subject to judicial notice. See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).

### B. California Insurance Law

In California, the interpretation of an insurance policy is a question of law for the court. Powerine Oil Co., Inc. v. Superior Court, 118 P.3d 589, 597 (Cal. 2005). Such interpretation must give effect to "the mutual intention of the parties at the time the contract is formed . . . ." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 627 (Cal. 1995). To determine the intent of the parties behind an insurance contract, the Court "look[s] first to the language of the contract in order to ascertain its plain meaning," reading the language in its "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." Id. (internal citations and quotation marks omitted). When a term is ambiguous, it should be liberally interpreted to protect the insured's reasonable expectation of coverage. La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co., 884 P.2d 1048, 1053 (Cal. 1994). But "[i]f [the] contractual language is clear and explicit, it governs." Minkler v. Safeco Ins. Co. of Am., 232 P.3d 612, 616 (Cal. 2010). After all, "[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected." Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co., 78 Cal. Rptr. 2d 429, 432 (Ct. App. 1998) (citing Legarra v. Federated Mutual Ins. Co., 42 Cal. Rptr. 2d 101, 105 (Ct. App. 1995)).

## II. Breach of Contract

In order to state a claim under the Policy's business interruption coverage, Plaintiffs must allege "physical loss or damage" to covered property. (Doc. No. 22-1 ¶¶ 29-30.) Defendant argues that it properly denied Plaintiffs' business interruption claim because Plaintiffs' temporary loss of use of their on-site dining facilities does not amount to

"physical loss or damage." (Doc. No. 15 at 8.)[2] On the other hand, Plaintiffs contend that the Policy's "physical loss or damage" requirement is at least ambiguous as to whether it encompasses their circumstances. (See Doc. No. 19 at 4.) Thus, Plaintiffs reason, the Court should deny Defendant's motion because it should resolve this ambiguity in favor of coverage. (Id.)

This Court recently dealt with a similar issue in <u>Unmasked Management, Inc. v. Century-National Insurance Co.</u>, 3:20-CV-01129-H-MDD, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021), <u>appeal filed,</u> No. 21-55090 (9th Cir. Feb. 5, 2021). There, restaurant owners likewise argued that the loss of use of their dining facilities during the COVID-19 pandemic satisfied a physical loss or damage trigger in their business interruption policy. Id. at *4. The Court, in accordance with California law, interpreted such a trigger to require a "distinct, demonstrable, physical alteration" to property for coverage to attach. Id. The Court then held that the restaurant owners' alleged temporary loss of the ordinary use of their properties did not satisfy this condition. Id. at *4-6. In so doing, the Court provided the following discussion.

> Physical loss or damage coverage limitations are commonplace in modern insurance policies. <u>MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.</u>, 115 Cal. Rptr. 3d 27, 37 (2010). Under California law, they generally require that there be a "distinct, demonstrable, physical alteration" to the property for coverage to attach. Id. at 38. "A direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.'" Id. at 38 (citation omitted). In other words, "some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., [the property] must have been 'damaged' within the common understanding of that term." Id.

---

[2] Additionally, Defendant argues that, in any event, Plaintiffs fail to state a claim for business interruption coverage because their losses are excluded under the Policy's loss of use and contamination exclusions. (Doc. No. 15 at 16-20.) Because the Court ultimately concludes that the Policy's business interruption coverage does not apply in the first place, the Court need not address these exclusions. <u>Waller</u>, 900 P.2d at 625 ("[W]hen an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded." (citation omitted)).

> The loss of use or functionality of the covered property alone is not sufficient to trigger coverage. See id. at 37; see also Doyle v. Fireman's Fund Ins. Co., 229 Cal. Rptr. 3d 840, 844 (Ct. App. 2018) ("[W]hen it comes to property insurance, diminution in value is not a covered peril, it is a measure of a loss.") For example, in MRI Healthcare, the California Court of Appeal held that an MRI machine's inability to function properly after it was powered down did not constitute a "direct physical loss." 115 Cal.Rptr.3d at 38-39. Similarly, Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co., 7 Cal. Rptr. 3d 844, 850-51 (2003), as modified on denial of reh'g (Jan. 7, 2004), held that the loss of electronic information in a database did not to qualify as a direct physical loss absent a showing that there was damage to tangible property. Further, in Doyle, the court held that an insured's financial loss resulting from the purchase of counterfeit wine was not covered by his property insurance policy because the wine was never stolen, destroyed, or physically altered. 229 Cal. Rptr. 3d at 843-44.
>
> Here, "Plaintiff[s'] FAC attempts to make precisely this substitution of temporary impaired use or diminished value for physical loss or damage in seeking Business Income and Extra Expense coverage." 10E, LLC v. Travelers Indem. Co. of Connecticut, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *4–5 (C.D. Cal. Sept. 2, 2020). Plaintiffs are not the first to contend that their temporary and partial loss of use or functionality of their property resulting from the Closure Orders and the COVID-19 pandemic constitutes a "direct physical loss of or damage to" that property. Courts applying California law have all but universally rejected these attempts as lacking the requisite "distinct, demonstrable, physical alteration" necessary to show physical loss or damage. See, e.g., Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos, No. CV 20-3619 PSG (EX), 2020 WL 6156584, at *4-5 (C.D. Cal. Oct. 19, 2020); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., No. 20-CV-03213-JST, 2020 WL 5525171, at *3-5 (N.D. Cal. Sept. 14, 2020); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020); 10E, 2020 WL 5359653, at *4-5. In fact, Plaintiffs point to no citable authority applying California law holding these allegations are sufficient to state a claim under a policy with a similar physical loss clause. Accordingly, to the extent that Plaintiffs argue that they are entitled to coverage for the loss of use or functionality of their property as a result of the Closure Orders or the COVID-19 pandemic at large, they fail to plead a "distinct, demonstrable, physical alteration," as required under the Policy and California law. See MRI Healthcare, 115 Cal.Rptr.3d at 38.

Id. (alterations in original).

The Court's analysis in <u>Unmasked Management</u> equally applies here. Plaintiffs essentially make the same allegations: that is, that their partial inability to use their restaurants because of on-site dining restrictions imposed by COVID-19 related closure orders constitutes "physical loss or damage" within the meaning of their business interruption policies. (<u>See, e.g.</u>, Doc. No. 22-1 ¶ 148.) Further, the language requiring physical loss or damage in each policy is similar. <u>Compare</u> (<u>id.</u> ¶ 30 (requiring a "direct result of physical loss or damage" to covered property))<u>, with</u> <u>Unmasked Mgmt.</u>, 2021 WL 242979, at *1 (requiring a "'direct physical loss of or damage to' the covered property"). Nevertheless, Plaintiffs argue that the Court should not follow <u>Unmasked Management</u>, as well as the many federal district court cases applying California law that held similarly, because, according to Plaintiffs, the Court in that case: (1) did not consider whether the policy language was ambiguous in this specific factual context; (2) erroneously concluded that, absent a demonstrable physical alteration to property, only a permanent loss of property would trigger coverage; and (3) did not explicitly address whether its interpretation would defeat the reasonable expectations of the insured.[3] (Doc. No. 19 at 15-16.) The Court is not persuaded by any of these arguments and will address each in turn.

First, the Policy's "physical loss or damage" requirement is not ambiguous. If a policy term has been "judicially construed" in a "sufficiently analogous context," that term is "not ambiguous." <u>McMillin Homes Constr., Inc. v. Natl. Fire & Marine Ins. Co.</u>, 247 Cal. Rptr. 3d 825, 833 (Ct. App. 2019), <u>review denied</u> (Aug. 28, 2019). Insurance policies commonly contain physical loss or damage coverage triggers. <u>Doyle v. Fireman's Fund Ins. Co.</u>, 229 Cal. Rptr. 3d 840, 843 (Ct. App. 2018) (citation omitted); <u>MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.</u>, 115 Cal. Rptr. 3d 27, 37 (Ct. App. 2010);

---

[3] Plaintiffs also fault the Court for not discussing four "contrary decisions" that support their arguments. (Doc. No. 19 at 16.) None of these decisions are persuasive because they did not apply California law. Courts applying California law have all but unanimously held the opposite. <u>Unmasked Mgt.</u>, 2021 WL 242979, at *4-6 (citing cases).

Croskey, et al., California Practice Guide: Insurance Litigation ¶ 6:276 (The Rutter Group, Aug. 2020 update) ("Property insurance policies normally cover 'direct physical loss or damage' to the insured property, without further defining these terms."); Plitt, et al., Couch on Insurance § 1148:46 (3d ed., Dec. 2020 update) (explaining that "modern insurance policies, especially of the all-risk type," are "frequently" triggered by "physical loss or damage"). California courts consistently interpret these coverage triggers to require a "distinct, demonstrable, physical alteration" to property. See, e.g., MRI Healthcare, 115 Cal. Rptr. 3d at 38.

This case is also sufficiently analogous to those in which California courts have arrived at this construction. As Plaintiffs point out, some of the California cases that interpreted the meaning of similar physical loss or damage terms did so in the context of property insurance, not business interruption insurance. (Doc. No. 19 at 14.) But this distinction is not persuasive because property and business interruption coverage commonly go hand in hand. See Croskey et al., supra ¶¶ 6:276.7-276.8 (noting that business interruption coverage can supplement property insurance policies). In fact, the Policy itself also has property insurance provisions, insuring Plaintiffs' property against all non-excluded risks of "physical loss or damage." (Doc. No. 22-1, Ex. 2 at 22.) Plaintiffs also attempt to distinguish the facts of this case from those requiring a physical alteration because of the uniqueness of the COVID-19 pandemic. (Doc. No. 19 at 14.) Yet, Plaintiffs fail to adequately explain why these factual distinctions necessitate a different interpretation. (See id.) The Court sees no reason why California law's physical alteration requirement should not also apply in this case. Therefore, the Policy's physical loss or damage trigger is not ambiguous because it has been "judicially construed" in a "sufficiently analogous" context. See McMillin, 247 Cal. Rptr. 3d at 833.

Second, the Court is not persuaded by Plaintiffs argument that "physical loss" includes the temporary loss of use of their business premises for certain purposes. To support their interpretation, Plaintiffs cite to Total Intermodal Services Inc. v. Travelers Property Casualty Co. of America, CV-17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal.

July 11, 2018).  In Total Intermodal the district court read a similar policy, requiring "direct physical loss of or damage to" property, to cover the "physical loss of" or "physical damage to" property because of the disjunctive phrasing of the clause.  Id. at *3-4.  The court then reasoned that the "physical loss of" requirement could be satisfied if the insured was permanently dispossessed of the covered property, even if that property was not damaged or physically altered.  Id. at *4.

Plaintiffs attempt to extend Total Intermodal to include the temporary deprivation of the use of property.  (Doc. No. 19 at 11-13.)  Yet numerous district courts have rejected this interpretation, including this Court and the district court that authored the Total Intermodal decision in the first place.  Unmasked Mgt., 2021 WL 242979, at *5 (citing cases).  Such an interpretation would unreasonably extend coverage beyond "manageable bounds," Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co., 2:20-CV-04423-AB-SK, 2020 WL 5938689, at *4 (C.D. Cal. Oct. 2, 2020), appeal filed, No. 20-56031 (9th Cir. Oct. 6, 2020) (citation omitted); Wellness Eatery La Jolla LLC v. Hanover Ins. Group, 20CV1277-AJB-RBB, 2021 WL 389215, at *6 (S.D. Cal. Feb. 3, 2021) (citation omitted), because "potentially any regulation that limits a business's operations would trigger coverage," Plan Check Downtown III, LLC v. AmGuard Ins. Co., 485 F. Supp. 3d 1225, at *6 (C.D. Cal. 2020), appeal filed, No. 20-56020 (9th Cir. Oct. 2, 2020).[4]  Thus, Plaintiffs' alternative interpretation of the Policy's "physical loss or damage" clause does not render the policy ambiguous.  Cf. Doyle, 229 Cal. Rptr. 3d at 842 ("An insurance policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." (citation omitted)).

Third, because the Policy's "physical loss or damage" clause is unambiguous, the Court need not consider Plaintiffs' arguments regarding their reasonable expectations of

---

[4] For the same reason, the Court does not find persuasive Plaintiffs' argument that an "idle period" exclusion in the policy may be rendered superfluous if a physical alteration to the property is required.  (Doc. No. 19 at 12); Wellness Eatery, 2021 WL 389215, at *6 ("'[T]he fact that some redundancy results is not fatal' where the 'the court has adopted the only reasonable construction of the contract.'" (citation omitted)).

coverage.  Under California law, "an insured's . . . objectively reasonable expectations may be considered to resolve an ambiguous policy provision . . . but cannot be relied upon to create an ambiguity where none exists." Lee v. Fid. Natl. Title Ins. Co., 115 Cal. Rptr. 3d 748, 759 (Ct. App. 2010) (omissions in original) (citation and internal quotation marks omitted).  In sum, the Court grants Defendant's motion with respect to Plaintiffs' breach of contract claim because Plaintiffs fail to allege the requisite "distinct, demonstrable, physical alteration" to their property.  Unmasked Mgmt., 2021 WL 242979, at *4-5.

### III. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs also allege a claim against Defendant for the breach of the implied covenant of good faith and fair dealing. (Doc. No. 22-1 ¶¶ 166-73.) "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Major v. W. Home Ins. Co., 87 Cal. Rptr. 3d 556, 567 (Ct. App. 2009), as modified on denial of reh'g (Jan. 30, 2009). "[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.'" Id. Here, because Plaintiffs are not "due" any benefits under the Policy's general business interruption provision, they fail to state a claim for bad faith. See id.; see also Waller, 900 P.2d at 639 ("It is clear that if there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."). Accordingly, the Court grants Defendant's motion for judgment on the pleadings as to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### Conclusion

The Court complements the parties for their thoughtful discussion during the hearing on this matter. The Court also sympathizes with Plaintiffs and other businesses suffering financial hardships during the COVID-19 pandemic. Nevertheless, the issue before the Court is whether Plaintiffs' alleged losses are covered by the Policy, which they are not.

Therefore, the Court grants Defendant's motion for judgment on the pleadings. The Court directs the Clerk to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

DATED: April 2, 2021

*/s/ Marilyn L. Huff*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT